ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE TIMKEN COMPANY | ) | |
| | ) | CASE NO. 5:08CV272 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John R. Adams |
| | ) | |
| ROBERT BOSCH, LLC | ) | ORDER |
| | ) | |
| Defendant. | ) | (Resolves Docs. 157) |
| | ) | |

Pending before the Court is Defendant Bosch's motion for judgment as a matter of law and/or a new trial.  For the reasons below, the motion is DENIED.

**I.      Facts**

This matter was tried to a jury beginning on May 18, 2009.  On May 29, 2009, the jury returned a verdict in favor of Plaintiff Timken.  Consistent with the schedule put in place by this Court, Bosch filed its post-judgment motion on August 4, 2009.  In its motion, Bosch seeks judgment as a matter of law and, in the alternative, a new trial.  Timken has responded in opposition to the motion, and Bosch has replied.  The Court now resolves the motion.

**II.     Legal Standard**

"Rule 59(e) motions serve a limited purpose and should be granted for one of three reasons: (1) because of an intervening change in controlling law; (2) because evidence not previously available has become available; or (3) because it is necessary to correct a clear error of law or preventing manifest injustice."  *Boler Co. v. Watson & Chalin Mfg., Inc.*, 372 F.Supp.2d 1013, 1025 (N.D. Ohio 2004) (quoting *General Truck Drivers, Chauffeurs, Warehousemen & Helpers,*

*Local No. 957 v. Dayton Newspapers, Inc*, 190 F.3d 434, 445 (6th Cir. 1999) (Clay, J. dissenting), *cert. denied*, 528 U.S. 1137 (2000)). "Rule 59 is not intended to give a disgruntled litigant the opportunity to re-argue his case or to re-litigate previously-decided matters." *Hughes v. Haviland*, No. 1:04CV593, 2007 WL 3376653 (N.D. Ohio Oct. 16, 2007) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).

With respect to Rule 50, the court will "consider[ ] the evidence in a light most favorable to the party against whom the motion is made, giving that party the benefit of all reasonable inferences," *Tuck v. HCA Health Srvs. of Tennessee, Inc.*, 7 F.3d 465, 469 (6th Cir. 1993), "without weighing the credibility of witnesses or considering the weight of the evidence." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1163 (6th Cir. 1990) (quoting *Gootee v. Colt Industries, Inc.*, 712 F.2d 1057, 1062 (6th Cir. 1983)). The jury's verdict must be supported by "substantial evidence." *Power-Tek Solutions Services, LLC v. Techlink, Inc.*, 403 F.3d 353, 358-59 (6th Cir. 2005). If the evidence points so strongly in favor of the movants that reasonable minds could not reach a different conclusion, judgment as a matter of law is appropriate. *Jordan v. City of Cleveland*, 464 F.3d 584, 594 (6th Cir. 2006); *Cline v. U.S.*, 997 F.2d 191, 196 (6th Cir. 1993).

### III. Analysis

#### A. Contract Duration

Bosch first contends that it is entitled to judgment as a matter of law on the issue of the contract's duration. The Court finds no merit in this contention.

Bosch raises numerous arguments regarding the applicability of UCC § 2-207, the law surrounding requirements contracts, and the law relied upon by Timken to support its claim. Bosch's argument boils down to the following: "In sum, there is nothing in the law or the facts of

this case suggesting that this Court should do anything other than apply the unambiguous language of the parties' offer and acceptance, language which does **not** include any durational term[.]" Doc. 157 at 14 (emphasis in original).  This statement, however, suffers from a fatal flaw – it assumes that the parties' contract was clear and unambiguous.  The evidence introduced at trial does not support this fact.

Bosch concedes, as it must based upon the overwhelming evidence at trial, that its "3rd Revision T1 Hub Quotation" formed a portion of the parties' contract.  The quotation includes language that indicates that the Johnson City plant will be used for the "entire T1 business."  The quotation notes that minimal transfer will be necessary to support the "entire T1 volume in MY09" and that productivity price decreases would be "2% year over year."  Additionally, it is undisputed that the quotation was sent in response to Timken's request for quotations.  Standing alone, these statements in *Bosch's* own document create ambiguity regarding the duration of the contract.  The statements strongly imply that the business will be for an extended duration.

The ambiguity of these statements was magnified by the fact that Bosch's quotation was in direct response to Timken's RFQ that contained the following:

> Buyer's preference is to enter into a Life-of-the-Part Contract with seller… During the term goods are supplied hereunder and for a period of 12 years after Buyer has completed the last purchase of goods, Seller will supply all of Buyer's service and replacement requirements for the goods[.]

Pl. Ex. 1-46.  Bosch is correct that the above language likely does not, in and of itself, create a contract of a specific duration.  However, when coupled with the language contained in Bosch's quotation, there exists a significant ambiguity surrounding the duration of the parties contract.  Bosch attempts to gloss over this language and simply conclude that the contract has no duration language.  Based upon the above, the Court cannot agree.  Bosch's motion for judgment as a

matter of law on the issue of contract duration is DENIED.

The Court notes that Bosch has made no argument that the jury improperly resolved this ambiguity based upon the extrinsic evidence it heard.  However, the extrinsic evidence overwhelmingly demonstrates that the parties' intended the contract to last for the life of the T1 program.  Just as one example, Bosch performed, on numerous occasions, financial calculations related to "total Program Life Revenue" (Pl. Ex. 67-3).  These calculations consisted of estimating losses to Bosch several years into the T1 program.  Furthermore, Bosch's Authorization to Act documents listed the "Project Duration" as "MY07 / 5 years" and discussed estimated volumes out into 2011.  Accordingly, the jury had before substantial extrinsic evidence that the parties intended that the contract for the "entire T1 business" last for the life of the program.

To the extent Bosch requests that the Court revisit its prior determination that the jury verdict implicitly determined the duration of the contract, the Court declines to do so.  As noted above, Rule 59 is not an appropriate vehicle to re-litigate previously argued and decided matters.  The parties briefed the issue of what precisely the jury verdict had determined and the Court resolved those arguments.   I decline to do so a second time.

  B.  Surcharges

In its motion, Bosch once again raises its argument regarding the parties' surcharge agreement.  While Bosch has routinely attempted to distance itself from the testimony of its own employees, the Court will not ignore such testimony.  Bosch's 30(b)(6) representative, Drew Shearer, testified as follows:

> Q. Now, when I asked you earlier if there was a specific meaning that steel surcharges had in the automotive industry, you said yes, there was a specific meaning. Do you recall that?

>A. Yes.
>
>Q. And is that specific meaning that steel surcharges were charges imposed by steel mills on top of the base prices for steel charged by those steel mills?
>
>A. Yes. It's the general definition for U.S. market.

Trial Tr. at 116. Despite Shearer's unequivocal statement of the meaning of the term "surcharge," and the undisputed evidence that no steel mill had ever imposed such a charge in this matter, Bosch contends that the parties had no agreement with respect to surcharges. Again, this argument is inconsistent with the evidence.

>Bosch's quotation contained the following:
>
>Surcharge:  Based on the current surcharge assumption, if these surcharge levels are confirmed to be lower – Bosch will pass those reductions on to Timken. Conversely, if the surcharge levels are confirmed to be higher – Bosch will pass those increases on to Timken. Specific details of this agreement to be finalized at a later date.

It is Bosch's contention that the last sentence above effectively negates all of the language before it. Bosch contends that the parties never "finalized" the surcharge agreement and therefore no agreement on surcharges existed.

The Court finds that the plain language of the surcharge provision creates a pass-through agreement. If Bosch incurs surcharges, they are passed on to Timken. There is no other way to read the language chosen *by Bosch*. The fact that the details of how such setoffs would occur were not finalized does nothing to negate the pass-through agreement. Furthermore, given that no surcharges, as defined by Bosch's representative, have ever occurred, the final sentence has no affect on the judgment in this matter. Whether the parties agreed to set off these amounts every quarter or every shipment is irrelevant as no surcharges were ever incurred by Bosch.

Finally, the mere fact that the parties discussed a surcharge index following the execution

of their contract does not alter the language that Bosch chose to utilize in its quotation.  As the plain language of the quotation creates a pass-through agreement, Bosch's post-judgment motion on this issue is not well taken.

C. Other Errors

Finally, in its motion, Bosch list eight alleged errors made by this Court that mandate the grant of a new trial.  These errors, however, do nothing more than reiterate Bosch's arguments as they related to motions in limine, evidentiary rulings, and ruling on the use of jury interrogatories.  As detailed above, "Rule 59 is not intended to give a disgruntled litigant the opportunity to re-argue his case or to re-litigate previously-decided matters."  *Hughes, supra* (citing *Engler*, 146 F.3d at 374.  Accordingly, Bosch's attempt to re-argue each of its prior motions is not proper under the rule.  Bosch's remaining challenges lack merit.

**IV.    Conclusion**

The jury's verdict is supported by substantial evidence and the Court finds no clear error of law that would warrant a new trial.  Bosch's motion is DENIED.

IT IS SO ORDERED.

|  |  |
|---|---|
| September 14, 2009 | /s/ John R. Adams |
| Date | Judge John R. Adams |
|  | United States District Court |